# CHARLESTON.

STATE *v.* FRANK MCCLUNG

(No. 4922)

Submitted October 18, 1927.  Decided October 25, 1927.

1.  CRIMINAL LAW—*Unlawful Arrest Does Not Bar Prosecution on Indictment Afterwards Regularly Found Against Person Arrested.*

    Where there has been an unlawful arrest of a person accused of a crime, the fact of such arrest will not bar a prosecution upon an indictment afterwards regularly found against the accused. (p. 333.)

2.  SAME—*Refusal to Instruct That no Presumption of Guilt Arises From Defendant's Failure to Testify is Error (Code, c. 152, § 19).*

    Where the defendant in a criminal case does not testify it, is error to refuse an instruction offered on his behalf to the

effect that no presumption, of guilt arises against him because he did not testify.   (p. 334.)

Error to Circuit Court, Fayette County.

Frank McClung was convicted of the possession of moonshine liquor, and he brings error.

*Reversed; new trial.*

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

Having been indicted for having in his possession a quantity of moonshine liquor, tried by jury, found guilty, and sentenced to confinement in jail for seventy-five days and to pay a fine of $100.00, Frank McClung prosecutes this writ of error to the judgment rendered on May 12th, 1923.

Deputy Sheriff William Holstein, the chief prosecuting witness, testified that he was standing near a pool room located in the basement of a building in Fayetteville about eleven o'clock on the night of April 25, 1922, when he saw defendant approaching the building from the street, staggering as if intoxicated and holding with one arm a jug containing a white liquid partially concealed under his coat; that the street was well lighted by electricity; that when defendant went down the steps from the sidewalk into the basement, he followed him and as a precaution drew his revolver as he entered the pool room a few feet behind defendant; that upon entering the room he took defendant by the shoulder and demanded that the whiskey which he said he saw in the jug, and from long experience knew it to be whiskey, be delivered to him.   A scuffle ensued, the jug was dropped to the concrete basement, breaking it and spilling the whiskey on the floor.   In the scuffle defendant was severely struck on the head with the pistol after which the arrest was completed by the aid of the proprietor of the pool room, and defendant handcuffed and taken to the sheriff's office.   The officer absorbed as much of the spilled whiskey as he could with his handkerchief and squeezed it into a glass tumbler which he

poured into a bottle labeled "Frank McClung" and placed it in the custody of the office deputy in a safe in the sheriff's office. The bottle containing the whiskey was introduced as evidence over the objection of defendant. The deputy sheriff is corroborated in some particulars by one or two occupants of the pool room as to what occurred after defendant and deputy entered the room. Witnesses for the defendant, who were also in the pool room at the time, give a different version of the difficulty from that told by the sheriff. The sheriff stated that defendant was so drunk that he could scarcely walk; while the others say that they did not discover that defendant was intoxicated, one of them, a witness for the state, saying possibly he had a drink or two. But all testify that a jug carried by defendant containing some kind of liquid fell on the floor and was shattered while the affray was in progress; but several of them say that they smelled no odor of liquor, contradicting by negative evidence a statement of the deputy sheriff that the liquor was odoriferous and was moonshine liquor. There is considerable divergence of opinions as to how the affray began and what occurred during its progress. Several of the witnesses testified that when they saw the revolver they immediately took positions behind concrete pillars to avoid possible injury and were not in a position to say exactly what was done, but as is usual in such cases, the witnesses differ in what was done by the actors in the affray. But this discrepancy in the evidence relative to the affray is not important. The outstanding facts are that the deputy observed defendant to approach and enter the pool room in an intoxicated condition, carrying what the officer said was a jug of moonshine liquor; that the officer entered the pool room immediately behind defendant and attempted to make an arrest, was resisted, a personal encounter ensued in which the jug was broken, a portion of the contents preserved as stated, and the arrest made.

Introduction of the bottle containing the liquor and labeled "Frank McClung" was objected to presumably on the ground that the custodian of the bottle from April 25th, 1922, until January 1923, (the time of trial) was not produced on the stand to say that the liquor therein was the same which

the deputy sheriff had squeezed out of his handkerchief. However, this introduction of evidence, if improper, was not made a ground for setting aside the verdict, nor was it preserved by special bill of exception. We cannot consider it. *Dransfield* v. *Motor Co.*, 102 W. Va. 370. The other point of error as set out in the petition for the writ is the giving and refusal of instructions. No appearance is made in this Court by counsel for defendant and no brief filed in support of the writ. The state gave two instructions. The first one is to the effect that if the jury believed from the evidence beyond a reasonable doubt that defendant on the occasion stated had in his possession a quantity of moonshine liquor as charged in the indictment then they should find the defendant guilty as charged. There was no error in this instruction. State's instruction number 2 attempted to tell the jury what is meant by a "reasonable doubt". While we can see no objection to this instruction as drawn, we have repeatedly discouraged instruction attempts to define "reasonable doubt", but have held that a verdict would not be set aside because of the giving of such instruction unless it was improperly drawn. We find no error in the state's instructions.

Defendant's instruction number one, refused, would have told the jury that the officer had no right to arrest the defendant or search his person for contraband liquors unless he had a search warrant for that purpose unless defendant was committing a violation of the law in his presence, and that any evidence obtained by such arrest or search could not be used as evidence; therefore, if the officer made the arrest on mere suspicion or belief that defendant had in his possession moonshine liquor without having a warrant for his arrest or a search warrant, then the evidence introduced as to the possession of the liquor gained in that way could not be considered. The officer says that defendant was drunk and was carrying, partially concealed, the jug which he, (the officer), from his long experience in such matters, knew almost conclusively was moonshine liquor, and that the arrest was made in consequence of his observation. Admitting for the sake of argument that the arrest was unlawful, it does not

follow that defendant could not be prosecuted or that the evidence procured in the attempt to make the arrest, is inadmissible. We had the same question in *State* v. *Snodgrass,* 91 W. Va. 553, a case somewhat similar to this one, in which we said that the unlawful arrest of one suspected of a crime is no bar to his prosecution for the offense upon a proper warrant or indictment subsequently issued or found against him. It was not error to refuse the instructions as prepared and offered.

The other instruction offered by defendant and refused, is as follows: "The court further instructs the jury that the fact that the defendant did not testify as a witness in his own behalf cannot be taken or considered by the jury as any evidence or even a circumstance showing or tending to show in the slightest degree the guilt of the accused." The Attorney General admits that this instruction properly states the law but justifies its refusal on the ground that the error was not a reversible one under all facts of the case. That this instruction should have been given, there can be no question. The statute, Sec. 19, Ch. 152, Code, declares that no presumption shall be formed against defendant because he does not testify in his defense. That the jury should be so told was a clear right to which the accused was entitled. All of the States and England have similar statutes and the almost unanimous opinion of the courts which have been called upon to construe them is that defendant is entitled to such instruction if he asks for it. The State of Washington by statute, has gone so far as to make it the duty of the court to give such instruction, although the defendant does not request it; and the neglect of the court to give such instructions was held to be error whether the defendant had asked for it or not. *State* v. *Myers,* 8 Wash. 177. In *State* v. *Walker,* 94 W. Va. 691, where the accused did not testify we held it to be error for the court to refuse such instruction, and reversed the case on that ground. A few of the decisions and authorities in support of that proposition are cited in that opinion and it is unnecessary to cite them here. The rules of law governing the trial of civil cases and criminal cases are quite different. If a party in a civil case does not deny damaging evidence against him, or having evidence in

his possession with which he could refute but fails to produce it, the presumption is against him and in favor of the un-contradicted damaging evidence; but it is quite different in prosecution for crimes. What does the ordinary juror know about the distinction between civil and criminal cases as to the presumption which may arise? The jury in this case, not being instructed, might have concluded that because defendant did not go upon the stand he admitted guilt and his admission in that way would impel them to find him guilty. Many other reasons could be suggested and some of them are suggested in cases referred to in *State* v. *Walker, supra.* See *State* v.. *Landry,* 85 Me. 95; *People* v. *Provost,* 144 Mich. 17. It may be that the jury would have found defendant guilty if the instruction had been given; but we cannot say as a conclusion of law that they would have been impelled under the evidence to return no other verdict except guilty. We think the jury should have been instructed in accordance with a plain right accorded defendant by the statute and that the failure to do so is reversible error. With the guilt or the innocence of the accused we are not concerned; he should have a fair and impartial trial according to the rules governing criminal trials.

The judgment will be reversed and a new trial awarded.

*Reversed; new trial.*